**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PHILIP J. TAVERNA,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 5:20-cv-0812-JDW** |
| | : | |
| **PALMER TOWNSHIP,** *et al.*, | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM</u>

Philip Taverna's claims about flooding in Palmer Township, Pennsylvania, were bound to wind up in this Court sooner or later. Mr. Taverna has been at odds with Palmer Township for more than two decades, resulting in at least nine separate actions in Pennsylvania state court. He failed to obtain any relief in state court, but he remains unwilling to give up his quixotic quest to stop what he sees as a corrupt conspiracy to advantage developers at the expense of landowners. So, inevitably, Mr. Taverna has come to this forum hoping for a different outcome.

The question the Court must answer is whether Mr. Taverna's Complaint asserts viable claims against the various defendants he has sued. In some respects, the task is easy because Mr. Taverna asserts claims based on statutes that do not allow private plaintiffs like Mr. Taverna to bring lawsuits. In other respects, Mr. Taverna's lengthy, sometimes rambling Complaint makes the task very challenging. From what the Court can tell, Mr. Taverna has pled facts that state a claim for violation of his substantive due process rights and a taking. His other claims fail as a matter of law. He has asked the Court for permission to file an amended complaint, but he has not attached the proposed amendment, so the Court cannot determine whether to allow it.

## I.    BACKGROUND

Given the lengthy, twisting allegations in the Complaint, the Court will summarize Mr. Taverna's allegations, rather than try to restate them.

### A.    The Origins Of Mr. Taverna's Dispute With The Township

Mr. Taverna resides in Palmer Township, Northampton County, Pennsylvania. At some point during the 1990s, the Township sent Mr. Taverna a letter claiming that he was blocking a swale, which presumably affected water runoff. Mr. Taverna started investigating flooding in the area and determined that two nearby developments were to blame. Mr. Taverna alerted the Township engineer about his findings. But he didn't get the outcome he wanted. Instead, the Township cited him for blocking the swale. Mr. Taverna warned the Township "to get a better engineer." (ECF No. 2 at 12.)  The Township ignored him. Ever since, Mr. Taverna contends that the Township, its officials, and certain private parties have engaged in a conspiracy to flood his property, harass and intimidate him, and obstruct justice. Indeed, Mr. Taverna asserts that stormwater has flooded his property numerous times over the years, washing away tons of soil, and uncovered roots on trees.

### B.    State Court Litigation About Flooding On Mr. Taverna's Property

On September 24, 2004, Mr. Taverna filed the first of nine related lawsuits against the Township and various other defendants in the Northampton County Court of Common Pleas. (ECF No. 31-6 at 2.)  For the most part, each of the lawsuits stemmed from the flooding of Mr. Taverna's property. In January 2006, the state court held a five-day non-jury trial in the first matter. The state court concluded that Mr. Taverna failed to prove that the defendants caused any damage to his property. (*Id.* at 3.)  On the contrary, the court determined that Mr. Taverna caused the northern portion of his property to flood by creating an artificial water channel on it. (*Id.*)  Mr. Taverna

spent the next six years pursuing the other cases and filing numerous appeals, all of which were dismissed. It appears that the state court litigation came to a close in October 2012, when the Superior Court of Pennsylvania dismissed Mr. Taverna's appeal in the ninth and final action. (ECF No. 31-7.)

### C.    Harassment After The State Court Litigation

Mr. Taverna contends that in the years during and following the state court litigation, the Township, its officials, and private parties continued to conspire against him. For example, he alleges that over the course of the litigation, the Township became aware that the site plans for a nearby development, Fox Run Estates, were flawed, and that an "amended swale" was needed to correct the flooding in the area. Mr. Taverna contends that the Township attempted to conceal these facts during the state court litigation and refused to take the necessary step of constructing an amended swale to correct the problem. He believes the Township refused to construct an amended swale as part of its attempts to harass and intimidate him. He alleges that the Township "corrected the mistakes they made that caused flooding to Mr. Taverna's three upstream neighbors" but did not correct mistakes that caused flooding on his property. (ECF No. 2 at 24.)

On May 7, 2007, the Township's Board of Supervisors passed an ordinance that amended its stormwater management ordinances. Mr. Taverna contends this was done to "minimize the facilities or best management practices for stormwater management and allow the developer to make more money by allowing houses to be built in greater numbers than would be allowed by federal law." (ECF No. 2 at 5.)  According to Mr. Taverna, the amended ordinance led to increased stormwater and flooding on local properties, including his. He also complains that the increased stormwater has led to erosion and pollution as well.

At some unidentified point, a developer, Tuskes Homes, Inc., bought land upstream from the Fox Run Estates. According to Mr. Taverna, the Township and its engineer required Tuskes to install a 6-foot pipe and a concrete swale to deal with stormwater runoff. Tuskes constructed the swale in 2018. The Township also instructed Tuskes to fabricate a fence on Mr. Taverna's property. Due to an error in the Fox Run Estates plan that the Township did not correct, "about 10-15 feet of [Mr. Taverna's] land were in effect given to the neighbors," and some of his trees were destroyed. (*Id.* at 13.)  Neither the Township nor Tuskes notified Mr. Taverna that they would be doing this work, and they have never compensated him.

### D.    Election Law Issues

Mr. Taverna also complains that Pennsylvania law permits voters to write in candidates of one party as the other party's nominee during the primary. *See* 25 P.S. § 2962. Mr. Taverna alleges that a law that permits candidates to run as both parties' nominee results in voter disenfranchisement. He also contends that the incumbent candidates for the Township Board of Supervisors do not notify voters that they are able to write in candidates from the opposite party. This allows the incumbents to control who is elected and retain their power. He does not explain how that has led directly to an injury.

### E.    Procedural History

On February 12, 2020, Mr. Taverna filed a Complaint against the Township, Charles Bruno (the Township's solicitor), Brian Dillman (the Township's engineer), the Northampton County Election Commission ("NCEC"), and Tuskes, asserting the following claims: 1) violation of 28 U.S.C. § 241; 2) violation of 28 U.S.C. § 242; 3) violation of 42 U.S.C. § 1986; 4) violation of 42 U.S.C. § 1985; 5) violation of 28 U.S.C. § 1343; 6) violation of 42 U.S.C. § 1983 (14th and 5th Amendment); 7) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO");

8) violation of 25 C.F.R. 11.448; and 9) violation of 42 U.S.C. § 1983 (1st Amendment). Each named Defendant moved to dismiss Mr. Taverna's Complaint, and those motions are ripe for review. Mr. Dillman also moved to enjoin Mr. Taverna from filing any further litigation. In response to the motions, Mr. Taverna requested leave to amend his Complaint to include additional defendants and claims.

## II.   STANDARD OF REVIEW

### A.   Motion To Dismiss

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A conclusory recitation of the elements of a cause of action is not sufficient. Instead, the plaintiff must allege facts necessary to make out each element of the claim. In other words, the complaint must contain facts that, if proven later, support a conclusion that a cause of action can be established. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

To determine the sufficiency of a complaint, the Court must take the following three steps: (1) the Court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify the allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *See Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2010).

Courts must construe *pro se* complaints liberally. *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011). In doing so, however, courts "may not rewrite a

plaintiff's allegations." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 309 (3d Cir. 2003).

### B.     Leave To Amend

Aside from certain instances where a party may amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(a) is meant "to enable a party to assert matters that were overlooked or were unknown at the time the party interposed the original complaint." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (quotation omitted). District courts must offer amendment in civil rights cases, particularly when a plaintiff is proceeding *pro se*, unless doing so would be inequitable or futile. *See Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017) (quotation omitted). A party seeking leave to amend a pleading must attach the proposed amendment so that the Court can evaluate it for futility. *See Veneziale v. Quest Diagnostics*, No. 11-cv-4879, 2013 WL 4551178, at * 2 (E.D. Pa. Aug. 28, 2013) (rule is "well-settled").

### C.     All Writs Act

The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Pursuant to the Act, courts may "issue injunctions restricting the filing of meritless pleadings by litigants where the pleadings raise issues identical or similar to those that have already been adjudicated. However, such injunctions are extreme remedies and should be narrowly tailored and sparingly used." *Matter of Packer Ave. Assocs.*, 884 F.2d 745, 746 (3d Cir. 1989) (citation omitted).

III.     **ANALYSIS**

    A.     **Motions To Dismiss**

        1.     **Rule 8(a)**

Federal Rule of Civil Procedure 8(a) requires, among other things, that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2). "[V]erbosity or length is not by itself a basis for dismissing a complaint" under Rule 8. *Bhatt v. Hoffman*, 716 F. App'x 124, 128 (3d Cir. 2017) (quotation omitted). In fact, in the context of a multi-party, multi-claim pleading "the entire pleading may prove to be long and complicated by virtue of the number of parties and claims." *Id.* (same). That is true here, where Mr. Taverna brings nine counts against five different defendants. While Defendants invoke Rule 8 as a basis to dismiss the Complaint, "all of them were able to identify and assert defenses to [the] claims against them[,] ... suggest[ing] that [the] … complaint in this action provided sufficient notice of [Mr. Taverna's] claims." *Id.* at 127-28. Mr. Taverna's Complaint is not a model of clarity, but the Court will not dismiss it for failure to comply with Rule 8.

        2.     **Non-cognizable claims**

In Counts 1 and 2 of his Complaint, Mr. Taverna attempts to bring claims against various defendants under 28 U.S.C. §§ 241 and 242. Those statutes are criminal statutes. The Third Circuit has held that neither of them creates a cause of action. *See Colon-Montanez v. Pennsylvania Healthcare Serv. Staffs*, 530 F. App'x 115, 118 (3d Cir. 2013); *Carpenter v. Ashby*, 351 F. App'x 684, 688 (3d Cir. 2009). Those decisions meant that Mr. Taverna cannot bring lawsuits based on either one. It does not matter that he describes himself as a "whistleblower;" he still cannot bring a claim.

In Count 5 of his Complaint, Mr. Taverna asserts a claim of voter disenfranchisement pursuant to 28 U.S.C. § 1343. Section 1343 is a jurisdictional statute. It does not create an express cause of action. In Count 8, Mr. Taverna brings a claim based on a violation of 25 C.F.R. 11.448, a regulation that criminalizes abuse of office that occurs on Native American land. *See* 25 C.F.R. § 11.102. Aside from the fact that the regulation only applies to acts on Native American land and therefore does not apply here, the regulation also does not create an express private right of action.

When a statute does not create a private right of action in express terms, courts consider whether to imply a cause of action. In doing so, "the 'determinative' question is one of statutory intent. If the statute itself does not 'displa[y] an intent' to create 'a private remedy,' then 'a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855-56 (2017) (quotations omitted). Nothing about either provision suggests that Congress intended to create a private right of action. Mr. Taverna does not make any argument that Congress had such an intent, and the Court cannot find anything in the language of the statute and regulation, or anywhere else, suggesting that they create such a right. The Court will therefore dismiss those claims.

Because Counts 1, 2, 5, and 8 rely on statutes and regulations that do not allow private individuals to bring suit, Mr. Taverna cannot amend his Complaint to state plausible claims. Therefore, the Court will dismiss those claims with prejudice, meaning that Mr. Taverna cannot revive them in the future. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) ("[A] district court must permit a curative amendment **unless** such an amendment would be inequitable or futile.") (emphasis added).

### 3.      Discrimination under 42 U.S.C. §§ 1985, 1986

Section 1985 prohibits three types of conduct: (1) the use of force or threat of force to prevent someone from accepting, holding, or dispatching the duties of an officer of the United States; (2) using force or threat of force to intimidate a witness or party from attending or testifying in a proceeding in a federal court; and (3) conspiring to deprive any person or class of persons of the equal production of the laws, or of equal protections and immunities under the laws. *See* 42 U.S.C. § 1985. Section 1986 requires anyone who knows of a violation of Section 1985 and has the power to stop the violation to do so. *See* 42 U.S.C. § 1986. Thus, a violation of Section 1986 can occur only if there was a violation of Section 1985. *See Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994); *Colon-Montanez*, 530 F. App'x at 118.

In order to state a conspiracy claim under Section 1985(3), "a plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006). Mr. Taverna has not pled a Section 1985(3) claim because he did not allege that Defendants entered into a conspiracy motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id.* On the contrary, Mr. Taverna makes clear that Defendants' alleged corruption "had one main intended purpose. The motive was greed and the result was more money for all the players." (ECF No. 33 at 43.) Section 1985(3) does not prohibit such pecuniary motives. His Section 1985 claim therefore fails, and his Section 1986 claim goes with it. The Court sees no basis for Mr. Taverna to allege the kind of invidious discrimination that such a claim requires. Thus, any amendment to this claim would be futile.

### 4.     RICO

RICO permits a private party to bring suit for injuries caused by a pattern of racketeering activity. *See* 18 U.S.C. §§ 1962, 1964(c). The statute defines "racketeering activity" to include specific criminal offenses. *See* 18 U.S.C. § 1961(1). A plaintiff can allege a pattern of racketeering activity by asserting at least two of those predicate acts. *See United States v. Fattah*, 914 F.3d 112, 163 (3d Cir. 2019). Mr. Taverna alleges that the defendants named in this claim engaged in racketeering activity in the following ways:

- Making misrepresentations in, or regarding, development site plans;

- Yelling at a witness during a deposition and seeking a restraining order from the Court against Mr. Taverna;

- Withholding public records and conducting meetings in secret without taking attendance or recording minutes;

- Intentionally violating the Clean Water Act and causing flooding to properties;

- Falsifying construction permits;

- Passing "fraudulent and self benefiting" ordinances; and

- Controlling who wins local elections by permitting candidates to cross-file.

(ECF No. 2 at 26.) As distressing as this alleged conduct might be, none of these acts constitutes "racketeering activity" within the meaning of RICO. *See* 18 U.S.C. § 1961(1). Nor do the criminal statutes and regulations on which Mr. Taverna relies (*i.e.*, 28 U.S.C. §§ 241, 242 & 25 C.F.R. 11.448). Thus, he has failed to plead the predicate acts necessary to establish a pattern of racketeering activity.

Mr. Taverna has also failed to identify an alleged enterprise, another necessary element of a RICO claim. *See* 18 U.S.C. § 1962. A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in

fact although not a legal entity[.]"  18 U.S.C. § 1961(4). To the extent Mr. Taverna contends that

the Township itself is the enterprise, his RICO claim would fail because a named defendant cannot

constitute the alleged enterprise. *See United States v. Bergrin*, 650 F.3d 257, 266 (3d Cir. 2011)

("[A] defendant must be a 'person' legally distinct from the 'enterprise' with which the person is

employed or associated.") (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 166

(2001)).  Thus, the Court will dismiss his RICO claim.

### 5.   Constitutional claims

Mr. Taverna raises a host of constitutional claims in Counts 6 and 9 of his Complaint via

42 U.S.C. § 1983. He has characterized Count 6 as a claim for violations of the 14th Amendment

and then Count 6B as a claim for violations of the 5th Amendment (due process and taking of land).

Count 9 contains a purported "whistleblower" claim that the Township and the Court have

construed as a claim for First Amendment retaliation. Though most of these claims fail, Mr.

Taverna has stated claims for a substantive due process violation and an unconstitutional taking.

### a.   Due process

Mr. Taverna brings due process claims under both the Fifth and Fourteenth Amendments,

both of which prohibit government deprivation of life, liberty, or property, without due process of

law. However, "the Due Process Clause of the Fifth Amendment only applies to federal

officials[.]" *Bergdoll v. City of York*, 515 F. App'x 165, 170 (3d Cir. 2013). Mr. Taverna has not

sued any federal officials, so his Fifth Amendment due process claims fail. Mr. Taverna may rely

on the Fourteenth Amendment, which applies to acts committed under color of state law. *See B &

G Const. Co. v. Dir., Office of Workers' Comp. Programs*, 662 F.3d 233, 246 n.14 (3d Cir. 2011).

This provision contains both substantive and procedural components. *See Holland v. Rosen*, 895

F.3d 272, 292 (3d Cir. 2018). Mr. Taverna appears to allege violations of both.

11

### i.        Substantive due process

There are "at least two very different" types of substantive due process claims. *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000).   The first type of substantive due process claim involves a challenge to the validity of a legislative act. *Id.* The second type of substantive due process claim involves a challenge a non-legislative state action. *Id.* Mr. Taverna seems to assert both types of claims.

### (a)        Challenge to a legislative act

Mr. Taverna raises facial challenges to two different pieces of legislation: (1) a local ordinance that governs stormwater management; and (2) a state law that permits write-in candidates in primary elections. Mr. Taverna's challenge to the stormwater ordinance is time-barred, and he lacks standing to challenge the election law. Thus, he cannot maintain a substantive due process claim based on either piece of legislation.

On May 7, 2007, the Township's Board of Supervisors passed ordinance number 2007-371 (the "Ordinance"), which amended Chapter 158 of the Township Code in its entirety. Chapter 158 contains numerous provisions that govern stormwater management. *See* Township of Palmer, PA, Chapter 158 Stormwater Management, *available at* https://www.ecode360.com/11573231 (last visited Sept. 15, 2020). Mr. Taverna does not challenge a specific code provision. Instead, he contends that the Township amended its stormwater management laws to "minimize the facilities or best management practices for stormwater management and allow the developer to make more money by allowing houses to be built in greater numbers than would be allowed by federal law." (ECF No. 2 at 5.)  He contends that the Ordinance led to increased stormwater and flooding on local properties, including his. (*Id.* at 5, 16.)

Section 1983 claims that originate in Pennsylvania are subject to a two-year statute of limitations. *See Lake v. Arnold*, 232 F.3d 360, 368 (3d Cir. 2000); *Kost v. Kozakiewicz*, 1 F.3d 176, 190 (3d Cir. 1993). A Section 1983 claim "begins to accrue when the plaintiff knows, or has reason to know, of the injury on which the action is based." *Soppick v. Borough of W. Conshohocken*, 118 F. App'x 631, 634 (3d Cir. 2004) (citing *Montgomery v. DeSimone*, 159 F.3d 120, 126 (3d Cir.1998)). According to the Complaint, the Township passed the ordinance on May 7, 2007, causing an increase in flooding to Mr. Taverna's property. (ECF No. 5, 16, 33.)  Thus, he knew, or should have known, about the alleged illegality of the ordinance at that time and was required to bring his Section 1983 within two years—by May 6, 2009.

Mr. Taverna contends that the statute of limitations does not apply "because the flooding is continuous and ongoing."  (ECF No. 33 at 9.)  In making this argument, Mr. Taverna appears to be relying on the continuing violations doctrine, which is an "equitable exception to the timely filing requirement."  *Soppick v. Borough of W. Conshohocken*, 118 F. App'x 631, 635 (3d Cir. 2004) (quoting *Cowell v. Palmer Township*, 263 F.3d 286, 292 (3d Cir.2001)). This argument fails, however, because it is the defendant's conduct, rather than any resulting harm, that must be continuous in nature. Indeed, "'[t]o establish a "continuing violation,' the plaintiff must demonstrate that: (1) there was at least one violation during the statutory period; and (2) that the defendant's actions were 'more than the occurrence of isolated or sporadic acts of intentional discrimination.'"  *Id.* (quotation omitted). Here, Mr. Taverna alleges that the Township passed an allegedly unconstitutional ordinance on one occasion more than 13 years ago, so he cannot rely on the continuing violations doctrine. This claim is time-barred. The Court will dismiss it with prejudice, as any amendment would be futile.

Mr. Taverna also attempts to challenge 25 P.S. § 2962, which allows Pennsylvania citizens to vote for write-in candidates during primary elections. *See* 25 P.S. § 2962(b) ("There shall be left at the end of the list of candidates for each office … as many blank spaces as there are persons to be voted for, for such office, in which space the elector may insert, by writing or stamping, the name of any person whose name is not printed on the ballot as a candidate for such office."). Mr. Taverna contends that, in effect, this law permits a candidate to be listed on the ballot for both major parties on election day, resulting in voter disenfranchisement. He also contends that voters are not provided notice of their ability to write-in candidates from the opposite party and that incumbent candidates conceal this information to retain their power. These generalized harms are insufficient to state a claim, however.

Article III of the United States Constitution limits Federal courts' power to cases and controversies. *See* U.S. Const. art. III, § 2, cl. 1. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. The doctrine developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted). As the party invoking federal jurisdiction, the plaintiff must allege facts demonstrating that each of the following elements have been satisfied in order to have standing to pursue the case: (1) the plaintiff "suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (same). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quotation omitted). That is, the injury "must actually exist" and "must affect the plaintiff in a personal and individual way." *Id.* at 1548 (quotation omitted).

Mr. Taverna has not alleged any facts that demonstrate that he suffered an actionable injury. Though he alleges that he is a voter and former candidate, he does not assert that the challenged statute, 25 P.S. § 2962, led to his disenfranchisement. Without pleading an injury in fact, Mr. Taverna does not have standing to pursue this claim.

### (b)      Challenge to a non-legislative act

"To prevail on a non-legislative substantive due process claim, 'a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies.'" *Nicholas*, 227 F.3d at 139-40 (quotation omitted). That is, the property interest must be "fundamental" under the Constitution. *Id.* at 142. Land ownership "is unquestionably 'a fundamental property interest'" entitled to substantive due process protection. *Id.* at 141. In land-use disputes like this case, government conduct "violates substantive due process only when it shocks the conscience." *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 399-400 (3d Cir. 2003).

Having searched the Complaint and construed the pleading liberally, as it must, the Court has identified only one alleged deprivation of a fundamental property interest. Specifically, Mr. Taverna alleges that:

> The [T]ownship also instructed Mr. Tuskes to fabricate a fence on Mr. Mr. Taverna's property. Again the Township conspired to harass Mr. Mr. Taverna. Fox Run Estates plan contained an error. As a result about 10-15 feet of land were in effect given to the neighbors. Instead of surveying the land to find that boundary, Palmer Township took this land away and deeded the dedicated property incorrectly. It was obvious that none of the other properties upstream had lost this property. But Palmer Township continued to harass and intimidate Mr. Mr. Taverna specifically. As a result the installer cut branches of the trees on the Mr. Mr. Taverna property which would not have been cut. These branches of the white pine tree will never grow back. Mr. Tuskes said none of Mr. Mr. Taverna's trees would be damaged. The Township has not corrected this error.

(ECF No. 2 at 13.)

These allegations, which the Court must accept as true at this stage of the proceedings, demonstrate that the Township took some portion of Mr. Taverna's land and destroyed his trees in an effort to harass and intimidate him. This conduct, which amounts to a "virtual taking," is the type of "gross misconduct" that shocks the judicial conscience. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285, 286 (3d Cir. 2004); *see Seitz v. E. Nottingham Twp.*, No. 16-cv-4130, 2017 WL 2264637, at *7 (E.D. Pa. May 24, 2017) ("[A] substantive due process claim exists where 'the facts asserted amount[ ] to a claim of an unconstitutional 'taking' without just compensation.'") (quotation omitted). Thus, Mr. Taverna has stated a claim for a substantive due process violation against the Township, though he cannot recover punitive damages against it. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983.").

Contrary to the Township's assertions, neither *res judicata*, collateral estoppel, nor the statute of limitations bars Mr. Taverna's substantive due process claim, at least at this stage of the proceedings. The Township contends that all of Mr. Taverna's claims are barred by *res judicata* and/or collateral estoppel because Mr. Taverna litigated against the Township in nine prior state court cases. According to a Memorandum Opinion from the trial judge in those cases, all of those cases related to alleged stormwater and flooding damage to Mr. Taverna's property. The Court cannot glean from the Opinion whether Mr. Taverna challenged the Township's virtual taking of his property in the state court litigation, and the Township has not provided any other filings from those cases to demonstrate whether the alleged taking was, or could have been, raised there. Rather, Mr. Taverna's complaint about the alleged taking appears to be separate and apart from his claims related to flood damage. Thus, the Court cannot determine whether *res judicata* and/or collateral estoppel bar this claim. Likewise, because Mr. Taverna has not alleged when the Township took

this portion of his property, the Court cannot evaluate whether the statute of limitations has run on this claim.

Mr. Taverna has not alleged any facts that Mr. Bruno, Mr. Dillman, or any past or present Township supervisor deprived him of his property. Thus, he cannot maintain his substantive due process claim against them. However, the same is not true with respect to his due process claim against Tuskes. Tuskes is correct that only state actors can be liable for Section 1983 violations. *See Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) ("[T]o state a claim of liability under § 1983, [a plaintiff] must allege that she was deprived of a federal constitutional or statutory right by a state actor."); *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 169-70 (3d Cir. 2004). However, private parties that engage in the prohibited action with state officials may be liable under Section 1983, if they act as willful participants in the activity. *See United States v. Price*, 383 U.S. 787, 794 (1966); *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 195 (3d Cir. 2005).

Mr. Taverna alleges that Tuskes installed a fence on his property, at the direction of the Township, and damaged trees in the process. At this stage of the proceedings, the Court must accept those allegations as true. Likewise, given the allegations in the Complaint, the Court may infer that Tuskes acted as a willful participant with the Township. Thus, the Court will not dismiss Mr. Taverna's substantive due process claim against Tuskes. Discovery will determine whether Tuskes qualifies as a state actor.

Finally, to the extent that Mr. Taverna attempts to assert a conspiracy claim against the Township and Tuskes under Section 1983, that claim fails. To state a claim for conspiracy to violate civil rights under Section 1983, Mr. Taverna must allege that: (1) two or more persons, acting under the color of state law, conspired to deprive him of his constitutional rights; (2) one or more of the conspirators performed an overt act in furtherance of the conspiracy; and (3) that overt

act injured him or his property or deprived him or some right or privilege of a citizen of the United States. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (quotation omitted). Mr. Taverna's bare assertion that the Township and Tuskes "conspired to take land away from Plaintiff and install a fence on said property and intentionally damage[] Plaintiff's trees" is too conclusory to support such a claim. *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). Thus, Mr. Taverna cannot maintain a conspiracy claim under Section 1983.

### ii.      Procedural due process

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quotation omitted). "The essence of due process is notice and an opportunity to be heard[.]" *Delaware Riverkeeper Network v. Sec'y Pennsylvania Dep't of Envtl. Prot.*, 903 F.3d 65, 74 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 1648 (2019). Having reviewed the Complaint and construed it liberally, the Court has identified only one possible, actionable deprivation of a protected property interest. As set forth above, Mr. Taverna contends that the Township instructed Tuskes to take a portion of Mr. Taverna's property and erect a fence on it. (ECF No. 2 at 13.)  He also alleges that Tuskes, acting at the direction of the Township, "[f]ailed to give notice that the trees would be cut and a fence would be placed on Plaintiff's property."  (*Id.* at 22, 30.)

Mr. Taverna does not identify any procedures that were available to him to challenge these actions, nor does he allege how those procedures deprived him of due process. However, "Pennsylvania's Eminent Domain Code … allows the government to commandeer private land for

public purposes." *Seitz*, 2017 WL 2264637 at *6. The Code mandates pre-deprivation notice, hearings, and compensation. *Id.* Moreover, as the Township points out, aggrieved property owners can pursue post-deprivation compensation by bringing an inverse condemnation suit. *Id.*

This dooms Mr. Taverna's procedural due process claim because the "unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Thus, it doesn't matter that the Township might have ignored its obligations under the Eminent Domain Code when it failed to provide pre-deprivation notice to Mr. Taverna. Under *Hudson*, "such 'random, unauthorized act[s]' cannot form the basis for a procedural due process claim" because Mr. Taverna has a meaningful post-deprivation remedy for the loss—an inverse condemnation suit pursuant to the Eminent Domain Code. *Seitz*, 2017 WL 2264637 at *7; *see also Chainey v. St.*, 523 F.3d 200, 223 (3d Cir. 2008) ("Pennsylvania provides adequate process for plaintiffs to obtain just compensation."). Because Mr. Taverna cannot dispute the availability of a post-deprivation remedy, the Court will dismiss that claim with prejudice.

### b.    Taking

"The Fifth Amendment's Takings Clause prohibits the government from 'taking private property for public use without providing just compensation.'  It applies to state and local governments through the Fourteenth Amendment." *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 151 (3d Cir. 2018) (*quoting Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 370 (3d Cir. 2012)). There are *per se* and regulatory takings, which are separate and distinct. *See R & J Holding Co. v. Redevelopment Auth. of Cty. of Montgomery*, 670 F.3d 420, 431 (3d Cir. 2011). Mr. Taverna appears to pursue both.

The government's physical occupation of an owner's land constitutes a taking *per se*. *Id*. Mr. Taverna has stated an actionable Fifth Amendment takings claim because he alleges that the Township took a portion of his land, erected a fence on it, and destroyed his trees in the process, all without compensation. *See Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167 (2019). Thus, the Court will not dismiss his takings claim at this stage of the proceedings. For the same reasons set forth above, this claim may proceed against the Township and Tuskes, but the Court will dismiss this claim against the other defendants, as Mr. Taverna has not pled any facts demonstrating their involvement in the alleged taking of his property.

Aside from an actual seizure of property, "[a] regulation … can be so burdensome as to become a taking[.]" *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942 (2017). The Supreme Court has enunciated two guidelines for determining when a government regulation constitutes a taking. *Id.* First, a regulation that "'denies all economically beneficial or productive use of land' will require compensation under the Takings Clause." *Id.* (quotation omitted). "Second, when a regulation impedes the use of property without depriving the owner of all economically beneficial use, a taking still may be found based on 'a complex of factors,' including (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Id.* at 1943 (same). As set forth above, Mr. Taverna contends that the Ordinance has led to increased stormwater on local properties, including his. While he asserts that the flooding has prevented him from enjoying his property, he has not alleged that it has denied him **all** economically beneficial or productive use of his land. Moreover, though he seeks damages as a result of the flooding, Mr. Taverna has failed to plead any facts that demonstrate the Ordinance's economic impact on him.

Nor has he pled any facts that suggest that the alleged intrusion has interfered with his distinct investment-backed expectations. Thus, Mr. Taverna has not stated a claim for a regulatory taking.

### c.      Equal protection

In an equal protection challenge to municipal land-use decisions, "the question is whether 'the Township has irrationally distinguished between similarly situated classes.'" *Cty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 171 (3d Cir. 2006) (quotation omitted). Mr. Taverna's allegations are too conclusory to support an equal protection claim. He contends that the Township "allow[s] mistakes to occur, they fix the mistakes that effect [sic] some neighbors but not all neighbors. The fact that they pick and choose who they fix the mistakes for, is a violation of the inequality aspect of the 14th [A]mendment." (ECF No. 2 at 24.)  According to Mr. Taverna, the Township "corrected the mistakes they made that caused flooding to Mr. Taverna's three upstream neighbors" but did not correct mistakes that caused flooding on his property. (*Id.*)  These allegations do not state an equal protection claim because they do not "offer any facts demonstrating how those properties were similarly situated." *Cty. Concrete*, 442 F.3d at 171. Given that omission, Mr. Taverna has not pled that the Township irrationally distinguished between the properties. Thus, the Court will dismiss Mr. Taverna's equal protection claim.

### d.      First Amendment retaliation

To plead a First Amendment retaliation claim, a plaintiff must allege: "(1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." *Eichenlaub*, 385 F.3d at 282 (citations omitted). Mr. Taverna alleges that he engaged in protected First Amendment activity when, at some unidentified point during the 1990s, he alerted the Township engineer as to the cause(s) of flooding

21

in the area. (ECF No. 2 at 12.)  Ever since then, Mr. Taverna contends that the "Township and its officials have conspired to flood the Mr. Taverna property, harass and intimidate Mr. Mr. Taverna and obstruct justice." (*Id.*)  Indeed, "a short time" after he reported his findings to the engineer, the Township issued a citation to Mr. Taverna for blocking a swale. (*Id.*)  These facts, accepted as true, would state a claim for First Amendment Retaliation. However, Mr. Taverna alleges that the retaliatory conduct, *i.e.* issuing a citation, occurred sometime in the 1990s. Thus, this claim for retaliation is time-barred, as it falls well-beyond the two-year statute of limitations for Section 1983 actions. Thus, the Court will dismiss this Count with prejudice, as any amendment would be futile.

### B.    Motion To Enjoin

Mr. Dillman seeks a permanent injunction to prohibit Mr. Taverna from "filing any further litigation arising out of or related to the alleged water intrusion onto Plaintiff's property, his claims of conspiracies among the Defendants, his claims arising from or relating to the design or construction of the bypass swale, and/or any of the prior lawsuits related thereto." (ECF No. 31-3 at 43.)  The Court understands that Mr. Taverna has a history of filing related lawsuits in state court. But this is Mr. Taverna's first attempt at asserting federal claims on this issue. And the Court has concluded that Mr. Taverna has stated at least two plausible claims. The Court therefore has no basis to enjoin Mr. Taverna from additional filings, at least at this stage of the proceedings.

### C.    Motion To Amend

Although Mr. Taverna seeks leave to amend his Complaint, he did not file a proposed amendment. That failure is fatal to his request, and the Court will deny it. However, Mr. Taverna can try again. If he does, he must file a motion that attaches his proposed amendment. In addition, any proposed amendment ***must*** comply with Federal Rule of Civil Procedure 8(a)(2), which

requires a "short and plain statement of the claim showing that the pleader is entitled to relief," and with Federal Rule of Civil Procedure 10(b), which requires a party to "state its claims … **in numbered paragraphs**[.]" Mr. Taverna's *pro se* status does not excuse him from these requirements, which enable the Court to review and evaluate his complaint. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."). In addition, any proposed amendment must be consistent with the rulings in this Memorandum. That is, Mr. Taverna should not re-assert any claims that the Court has dismissed with prejudice. The Court will deny any request for an amendment that includes claims that the Court has dismissed.

## IV.    CONCLUSION

The Court will dismiss Counts 1-5 and 7-9 with prejudice. This means that Mr. Taverna cannot raise these claims again. *See Papera v. Pennsylvania Quarried Bluestone Co.*, 948 F.3d 607, 611 (3d Cir. 2020) ("A dismissal with prejudice 'operates as an adjudication on the merits,' so it ordinarily precludes future claims.") (citation omitted). However, the Court will not dismiss the substantive due process and takings claims asserted in Count 6, as outlined herein. The Court will not enjoin Mr. Taverna from filing further litigation at this time, but it will deny Mr. Taverna's Motion to Amend without prejudice, as set forth above. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

September 16, 2020

23