**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PHILIP J. TAVERNA, : | |
|     Plaintiff, : | |
| : | |
| v. : | Case No. 5:20-cv-0812-JDW |
| : | |
| PALMER TOWNSHIP, *et al.*, : | |
|     Defendants. : | |

**MEMORANDUM**

Philip Taverna offers a deluge of factual allegations in an attempt to revive claims that the Court has dismissed. Those allegations do not save his existing claims because they do not undermine Defendants' arguments that the statute of limitations bars them. The allegations also do not permit him to revive claims that the Court has dismissed or offer a basis for him to assert new claims because they do not make out the basis for a legally viable claim. The Court will therefore grant Defendants' summary judgment motions and deny Plaintiff's motion to amend his complaint.

**I.   BACKGROUND**

    **A.   Factual History**

The Parties and the Court are well-aware of the factual allegations that Mr. Taverna has levied against the Defendants in this case. Therefore, the Court will not repeat them here and, instead, incorporates by reference the factual recitation set forth in its prior memorandum. *See Taverna v. Palmer Twp.*, No. 20-cv-812, 2020 WL 5554387, at *1-2 (E.D. Pa. Sept. 16, 2020).

    **B.   Procedural History**

On February 12, 2020, Mr. Taverna filed a Complaint against Palmer Township, Charles Bruno (the Township's solicitor), Brian Dillman (the Township's engineer), the Northampton County Election Commission ("NCEC"), and Tuskes Homes, Inc., asserting the following claims:

1) violation of 28 U.S.C. § 241; 2) violation of 28 U.S.C. § 242; 3) violation of 42 U.S.C. § 1986; 4) violation of 42 U.S.C. § 1985; 5) violation of 28 U.S.C. § 1343; 6) violation of 42 U.S.C. § 1983 (14th and 5th Amendment); 7) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); 8) violation of 25 C.F.R. 11.448; and 9) violation of 42 U.S.C. § 1983 (First Amendment). On September 16, 2020, following a flood of briefing, the Court dismissed all of Mr. Taverna's claims except for his claims against the Township and Tuskes Homes for violations of substantive due process and an unconstitutional taking. Both claims relate to the alleged placement of a fence on Mr. Taverna's property.

On September 28, 2020, the Township filed an Answer. It included as Exhibit A to its Answer an email dated November 28, 2017, in which Mr. Taverna complains that the fence was on his property, and he says that he "pointed that out to Tuskes months ago." (ECF No. 42-2 at 3 (the "November 2017 Email").) On September 29, 2020, the Township moved for judgment on the pleadings on Mr. Taverna's remaining claims. That same day, the Court provided notice to all of the Parties, including Mr. Taverna, that it would convert the Township's motion into a motion for summary judgment because the Township relied on extraneous evidence to support its position. On October 7, 2020, Tuskes Homes moved for summary judgment as well.

On December 3, 2020, Mr. Taverna filed his opposition to the summary judgment motions. He also filed a motion for leave to amend his Complaint. In doing so, Mr. Taverna failed to comply with the Court's prior Order, which directed him to attach a proposed amended complaint that complies with Federal Rules of Civil Procedure 8(a) and 10(b), in particular. Instead, Mr. Taverna filed two discrete "Amendments" and a "Petition to Amend." (ECF Nos. 62-63 & 65 (collectively the "Motion to Amend".)

According to Mr. Taverna, "Amendment One" "concerns the disenfranchisement of elections in Northampton County." (ECF No. 62-1 at 1.) Mr. Taverna's claim centers on an unidentified Pennsylvania law "that allows voters in a primary to use write-in ballots to vote for someone not in the voter's major party." (*Id.* at ¶ 2.) He contends that the law violates the Equal Protection Clause and disenfranchises voters and candidates.

"Amendment Two" is comprised of four parts: "Part One," "Part Two," "Taking," and a section about equal protection. (ECF No. 62-2.) Part One deals with alleged stormwater on Northwood Avenue in Palmer Township. According to Mr. Taverna, there has been a significant increase in the flow of stormwater past his property, and the increase was "caused by poor design and an inlet box that was placed in the wrong position to possibly catch any stormwater." (ECF No. 62-2 at ¶ 2.) He contends that this violates stormwater laws, constitutes a public nuisance, and amounts to a taking. However, he says that the flooding, in and of itself "causes no damage to the plaintiff's property if it is not distributed on its way to the inlet boxes . . .." (*Id.* at ¶ 3.) However, because there is so much stormwater on Northwood Avenue, a large amount of water sprays onto Mr. Taverna's property as cars drive by, causing damage to his property "each and every time there is a storm." (*Id.* at ¶¶ 4-8.) Mr. Taverna alleges that stormwater flooded his property during a storm on November 30, 2020. (ECF No. 65.)

In Part Two of Amendment Two, Mr. Taverna alleges that Tuskes Homes designed and built an "amended swale" on Palmer Township's property that is too small to contain all of the stormwater. (ECF No. 62-2 at ¶¶ 16-17, 19.) He contends that the resulting damage also constitutes a taking.

Amendment Two also includes additional allegations regarding Mr. Taverna's surviving taking claim. In his proposed amendment, Mr. Taverna acknowledges that someone removed the

3

offending fence in 2018, but empty post holes remain. According to Mr. Taverna, the fence was built on land adjacent to the amended swale that Tuskes Homes constructed. However, he contends that he (rather than the Township) is the actual owner of this land, as a result of adverse possession. Alternatively, he alleges that someone made a mistake during the development of Fox Run Estates, and that the Township should have acknowledged that the land belongs to Mr. Taverna. (*Id.* at ¶¶ 25, 27.)

In Amendment Two, Mr. Taverna invokes the Equal Protection Clause and alleges that a few property owners, like him, who live downstream from the developments are "burdened by the flooding caused by the poor use or enforcement of the stormwater laws." (*Id.* at ¶¶ 31-32.) On the other hand, the property owners who live within upstream developments are protected from the stormwater. He claims that the Township has treated the downstream neighbors differently than those who live in the developments.

In his separate Petition to Amend his Complaint, Mr. Taverna explains further that there were four other downstream neighbors whose backyards flooded with stormwater. However, he alleges that the Township instructed Tuskes Homes to correct this problem for those neighbors but not for him. Thus, he contends that the Township "unfairly applied the laws" when it "fixed the damage to the neighbors but not the damage to the plaintiff caused by the same illegal stormwater." (ECF No. 63 at ¶ 13.)

Finally, Mr. Taverna seeks to amend his RICO claim. In pursuit of those efforts, he alleges that "the [T]ownship is the enterprise," and the individual defendants would be "the supervisors, solicitor and engineers, developers." (*Id.* at ¶ 4.) Mr. Taverna contends that these defendants "have a mafia that is set up to develop land illegally." (*Id.* at ¶ 5.) He alleges that they fail to correct problems and retaliate against those who alert them to those problems. The Township,

Tuskes Homes, and a dismissed defendant, Mr. Dillman, all filed oppositions to Mr. Taverna's Motion to Amend his Complaint. Mr. Taverna's motion and the summary judgment motions are ripe for disposition.

## II.     MOTION FOR SUMMARY JUDGMENT

### A.     Legal Standard

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted).

### B.     Analysis

Mr. Taverna's unconstitutional taking and due process claims against the Township and Tuskes arise under 42 U.S.C. § 1983. Because these claims originated in Pennsylvania, they are subject to a two-year statute of limitations. *See Lake v. Arnold*, 232 F.3d 360, 368 (3d Cir. 2000); *Kost v. Kozakiewicz*, 1 F.3d 176, 190 (3d Cir. 1993). A Section 1983 claim "begins to accrue when

5

the plaintiff knows, or has reason to know, of the injury on which the action is based." *Soppick v. Borough of W. Conshohocken*, 118 F. App'x 631, 634 (3d Cir. 2004) (citing *Montgomery v. DeSimone*, 159 F.3d 120, 126 (3d Cir. 1998)).

Mr. Taverna knew about the fence on his property at least as early as November 28, 2017, when he sent the November 2017 Email. At that point, his claims about the fence on his property began to accrue. He therefore had to file any Section 1983 claims based on the fence by November 27, 2019, at the latest. He did not file this action until February 12, 2020. That came 2 ½ months too late. The statute of limitations bars the claim.

Nothing in Mr. Taverna's opposition or in the Motion to Amend changes that analysis or suggests that there is a genuine factual dispute about the accrual of his claims arising from the fence on his property. According to Mr. Taverna, "[t]he issue of the taking is not about the fence. … It is an issue of the deed." (ECF No. 62-2 at ¶¶ 23-24.) He claims that roughly 10-15 feet of additional land belongs to him (not the Township) as a result of adverse possession or due to an error in the plans for the Fox Run Estates development. Mr. Taverna asserted his ownership of this tract of land in the November 2017 Email, if not earlier. To the extent Mr. Taverna had a claim against the Township or Tuskes Homes based on an alleged taking of this property, he was required to bring that claim by November 27, 2019. His proposed amendments do not change that outcome.

Nor do the proposed amendments state a viable taking claim regarding the deed, in any event. Mr. Taverna's proposed amendments do not indicate that the Township has occupied this land or otherwise attempted to take it from him, which would be necessary to plead a *per se* taking claim. Instead, he just alleges that Mr. Tuskes "claimed the township owned the land that the fence

was on." (*Id.* at ¶ 24.) The Court doubts that this bald assertion (by a third-party), without any action to back it up, rises to the level of an unconstitutional taking under the Fifth Amendment.

### III. MOTION TO AMEND

#### A. Legal Standard

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Within the Third Circuit, "district courts must offer amendment [in civil rights cases]—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017) (quotation omitted).

#### B. Analysis

##### 1. Election disenfranchisement claims

In its prior memorandum and order, the Court dismissed Mr. Taverna's claims against the NCEC challenging an unidentified Pennsylvania statute that permits voters to write-in candidates from the opposing party during primary elections. According to Mr. Taverna, this rule "allows candidates for supervisor in Northampton County to obtain enough write-in votes in the primary to be on the November ballot as a nominee for both parties." (ECF No. 2 at 9.) Mr. Taverna alleged that the rule is unconstitutional because it disenfranchises voters and candidates. The Court construed his claim as a claim for a substantive due process violation and dismissed it for lack of standing. *See Taverna*, 2020 WL 5554387 at *7. In seeking to amend this claim, Mr. Taverna contends that the challenged law violates the Equal Protection Clause. However, his proposed amendment is futile, as Mr. Taverna still does not have Article III standing to bring this claim.

As an initial matter, Mr. Taverna's claim fails because he does not identity the law that he is attempting to challenge. He contends that 25 P.S. § 2962(b) is not the law at issue. However, without pointing to the offending statute, Mr. Taverna cannot state a plausible claim that the statute is unconstitutional. It is not the Court's job to comb the Pennsylvania Election Code to try to determine the statute about which Mr. Taverna is complaining.

Mr. Taverna's proposed amendments also do not demonstrate that he has suffered an injury in fact in order to have standing to bring this claim as either a voter or a candidate. For an equal protection claim, "[t]he key inquiry for standing is whether the alleged violation of the right to vote arises from an invidious classification—including those based on 'race, sex, economic status, or place of residence within a State,'—to which the plaintiff is subject and in which 'the favored group has full voting strength and the groups not in favor have their votes discounted[.]'" *Bognet v. Sec'y Com. of Pa*, 980 F.3d 336, 358 (3rd Cir. 2020) (quotations omitted). Mr. Taverna does not include any allegations that satisfy this standard. Instead, he just alleges that he "has been adversely affected by this obscure law" and that it "led to disenfranchisement." (ECF No. 62-1 at ¶ 7.) He does not allege how he has been affected or how it led to anyone's disenfranchisement. Without more, these conclusory allegations do not establish standing.

Similarly, Mr. Taverna's proposed amendments do not set forth a cognizable injury as a candidate. He alleges that the challenged law "resulted in the opponent being listed as a candidate for both parties and the plaintiff was not." (*Id.* at ¶ 13.) But he has not alleged the sort of invidious discrimination or other intentional unlawful conduct necessary to sustain an equal protection claim. *See Bognet*, 980 F.3d at 361. Mr. Taverna also does not explain how his alleged right to run for township supervisor "affects him in a particularized way when, in fact, all candidates in

Pennsylvania, including [his] opponent, are subject to the same rules." *Id.* at 351. Absent such an injury, Mr. Taverna does not have standing to pursue this claim.

### 2. Claims about stormwater on Northwood Avenue

Mr. Taverna cannot maintain any of his claims based upon the alleged stormwater that runs down Northwood Avenue. Previously, Mr. Taverna alleged that a Township ordinance caused the increased flooding and was unconstitutional. The Court construed his allegations as a claim for a substantive due process violation and dismissed the claim with prejudice as time-barred. *See Taverna*, 2020 WL 5554387 at *6. In seeking to amend his Complaint, Mr. Taverna now contends that the Township's failure to stop the flooding down Northwood Avenue "is a public nuisance[,]" "violates all stormwater laws[,]" and "results in a taking." (ECF No. 62-2 at ¶¶ 2-3, 8.) However, those are mere legal conclusions that the Court need not accept as true.

In any event, Mr. Taverna cannot maintain a regulatory taking claim for the same reasons the Court articulated in its prior memorandum. *See Taverna*, 2020 WL 5554387 at *10. In addition, Mr. Taverna cannot maintain a claim against the Township for public nuisance or a violation of stormwater laws because he does not allege that the Township caused the increased stormwater to flow down Northwood Avenue. Instead, he alleges that the increase in stormwater "is caused by poor design and an inlet box that was placed in the wrong position to possibly catch any stormwater." (ECF No. 62-2 at ¶ 2.) He does not attribute the poor design or placement of the inlet box to the Township. On the contrary, he appears to attribute these flaws to a local developer, as he contends that the flooding down Northwood Avenue "did not happen before the development destroyed the lay of the land and changed the flow of the stormwater." (*Id.* at ¶ 4.) However, Mr. Taverna faults the Township for allowing the development to occur and for failing to address the flooding. To the extent Mr. Taverna is attempting to bring an action to require the

9

Township to enforce local stormwater regulations, he has not demonstrated that he is entitled to the extraordinary remedy of mandamus relief. *See Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 287 (3d Cir. 2004) ("Mandamus will issue to compel a government agency's performance of a ministerial act when the plaintiff has a clear legal right to the remedy, the defendant has a duty, and there is no other equitable or appropriate remedy."). Thus, Mr. Taverna could not sustain his claims based upon the alleged flooding on Northwood Avenue.

### 3. Equal protection claims

Mr. Taverna asserts two related claims based on alleged violations of the Equal Protection Clause. First, he claims that in failing to enforce stormwater laws, the Township treats downstream property owners differently than those who live in developments. Second, he alleges that the Township corrected the flooding issues that occurred on four other downstream neighbors' properties, but refused to do the same for Mr. Taverna. To prevail on either theory, however, Mr. Taverna must allege that he is similarly situated to those the Township has protected. *See Cty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 171 (3d Cir. 2006) ("[I]n an equal protection challenge the question is whether 'the Township has irrationally distinguished between similarly situated classes.'") (quotation omitted); *Jones v. Sposato*, 783 F. App'x 214, 217 (3d Cir. 2019) (a plaintiff pursuing a "class-of-one" theory must "allege that he 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment'") (quotation omitted). Mr. Taverna's "naked assertion" that the Township treated him and/or other downstream property owners less favorably than others does not satisfy the pleading standards. *See Jones*, 783 F. App'x at 217. Thus, it would be futile to permit Mr. Taverna to amend these equal protection claims.

####    4.    Claims about the "amended swale"

It would be futile to permit Mr. Taverna to amend his Complaint to include a taking claim against the Township and/or Tuskes Homes based on the construction of an inadequate swale on the Township's property because this conduct does not amount to a regulatory taking or a *per se* taking.  Indeed, Mr. Taverna does not allege that any regulation denied him all economically beneficial or productive use of his land or otherwise impeded his use of his property.  *See Murr v. Wisconsin*, 137 S. Ct. 1933, 1942-43 (2017).  In addition, the construction of the inadequate swale is not a *per se* taking because the swale was built on the Township's property—not Mr. Taverna's.  *See R & J Holding Co. v. Redevelopment Auth. of Cty. of Montgomery*, 670 F.3d 420, 431 (3d Cir. 2011) ("[A] *per se* taking can be triggered by either: (1) a physical occupation of the **owner's land** or (2) a transfer of title.") (emphasis added).  Thus, the Court will not permit Mr. Taverna to amend his Complaint to include this claim.

####    5.    RICO Claim

Mr. Taverna's proposed amendments are also insufficient to resuscitate his RICO claim. He alleges that the Township is an enterprise, and the RICO actors are the Township's supervisors, solicitor, engineers, and developers, including two defendants who the Court dismissed from this matter, Charles Bruno and Brian Dillman.  Mr. Taverna contends that when someone raises concerns about problems in the Township, the defendants refuse to fix those problems and retaliate by filing complaints, tampering with witnesses, withholding evidence in litigation, and seeking baseless and/or embarrassing restraining orders.  He contends this is "a mafia that is set up to develop land illegally."  (ECF No. 63 at ¶ 5.)  Mr. Taverna's RICO claim fails for the same reason it did before:  he has not alleged a pattern of racketeering activity necessary to support a RICO claim.

Witness tampering is the only alleged conduct that could constitute a predicate act of racketeering under the RICO statute. *See* 18 U.S.C. § 1961 (defining racketeering activity to include tampering with a witness). Mr. Taverna does not expand on this allegation in his proposed amendments. In his Complaint, however, he alleged that Mr. Bruno, the Township's solicitor, yelled at a Township engineer, Mr. Adams, during Mr. Adams' deposition in connection with Mr. Taverna's state court litigation. According to Mr. Taverna, Mr. Bruno yelled and berated Mr. Adams, driving Mr. Adams to tears and leading him to change his deposition testimony to suit Mr. Bruno's wishes. Mr. Taverna does not allege that any other proposed defendant engaged in similar conduct, and this allegation cannot sustain a RICO claim for various reasons.

*First*, assuming the alleged conduct constitutes witness tampering under 18 U.S.C. § 1512, this single incident does not constitute a pattern of racketeering activity necessary to plead a RICO claim. *See United States v. Fattah*, 914 F.3d 112, 163 (3d Cir. 2019) (quoting 18 U.S.C. § 1961(5)). *Second*, Mr. Taverna cannot maintain a RICO claim based on this conduct because he has failed to demonstrate the necessary standing to bring such a claim. That is, Mr. Taverna has not alleged that the predicate offense of witness tampering was both the "but for" and proximate cause of the flood damage to his property. *See St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, 300 (3d Cir. 2020). *Third*, the allegation of witness tampering occurred during a deposition in connection with Mr. Taverna's state court litigation against the Township and various other defendants. That litigation ended in 2012—long before Mr. Taverna filed suit in this Court. As such, any RICO claim based upon this allegation of witness tampering is time-barred. *See Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*, 359 F.3d 226, 232-33 (3d Cir. 2004) (explaining that there is a four-year statute of limitations for civil RICO claims). Because it would be futile to pursue this RICO claim, the Court will deny Mr. Taverna's motion to amend it.

## IV. CONCLUSION

Mr. Taverna's taking claim is time-barred, and his proposed amendments do not render that claim timely. Therefore, the Township and Tuskes Homes are entitled to summary judgment on that claim. In addition, none of Mr. Taverna's proposed amendments states a claim upon which relief can be granted. Therefore, it would be futile for the Court to allow Mr. Taverna to amend his Complaint to include them. So the Court will deny Mr. Taverna's motion for leave to amend his Complaint. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

December 30, 2020